NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 15, 2009
Decided January 25, 2010

*Before*

TERENCE T. EVANS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 09-2281

| | |
|---|---|
| DAWN L. KITTELSON, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 08-cv-501-bbc |
| | |
| MICHAEL J. ASTRUE, | Barbara B. Crabb, |
| Commissioner of Social Security, | *Chief Judge*. |
| *Defendant-Appellant*. | |

**O R D E R**

Dawn Kittelson applied for disability insurance benefits claiming that she is disabled by fibromyalgia, chronic fatigue, restless leg syndrome, and depression. An administrative law judge (ALJ) denied her claim after a hearing, but that decision was vacated when the Appeals Council granted Kittelson's petition for review. After a second hearing, the ALJ again denied the claim. The Appeals Council affirmed, and the ALJ's decision became the final decision of the Commissioner of Social Security. That decision was again affirmed by the district court following an appeal by Ms. Kittelson. We are next in line to consider Ms. Kittelson's case.

On appeal to us, Kittelson asserts that the ALJ made an improper adverse credibility determination, erroneously found that her depression was not severe, incorrectly determined that she could do light work when able to change position, and posed an incomplete hypothetical to a vocational expert. Because the ALJ's decision--while flawed--is adequately articulated and supported by substantial evidence, we uphold the denial of benefits.

Kittelson, who is 54 years old, worked for almost 25 years in a plastics factory before leaving the labor force due to chronic pain. She first applied for benefits in 2004, alleging disability as of 2001. It is undisputed that Kittelson has several problems: she is obese and suffers from fibromyalgia, restless leg syndrome, depression, back problems, and carpal tunnel syndrome.

Unemployment left Kittelson without health insurance, but she has seen several doctors. Dr. John White, a family practice physician, and Brad Kreuger, White's assistant, treated Kittelson. They diagnosed her with fatigue, chronic pain, and depression, prescribed her anti-depressants, and recommended specialists who diagnosed her with fibromyalgia and restless leg syndrome.

Two doctors who examined Kittelson within 14 months of each other reached similar prognoses for her capacity to work. Neither Dr. Donald Bodeau, whom she saw for an occupational health evaluation in 2003, nor Dr. Qingquan Fu, who examined her at the behest of the SSA in 2004, determined that Kittelson was incapable of working. Dr. Bodeau found that she was "not disabled from employment in any sense," while Dr. Fu suggested that she could perform light work with intermittent rest.

Dr. Marcus Desmonde, a licensed psychologist, evaluated Kittelson for disability benefits in 2004 and 2007. He found that she had average concentration and no memory problems. He diagnosed her with depressive disorder but consistently found that she had mild to moderate symptoms and functional limitations in the last six months. In 2004 he concluded that Kittelson could not tolerate the stress of employment, but in 2007 he determined that she *might* have difficulty working, primarily due to her chronic pain.

In 2007 Dr. Larry Studt, an occupational medicine specialist, performed the most recent physical examination of Kittelson to evaluate her benefits claim. Dr. Studt recorded that she had difficulty rising from a squatting position, bending, getting on and off the exam table, hopping, and squatting, and that her obesity likely played a role in her fatigue and mobility problems. He also noted that her prognosis was slowly deteriorating with regard to her daily activities and pain level. Nonetheless, Dr. Studt determined that she could sit

and stand with a change in position every 30 to 45 minutes, walk 1/4 to ½ mile, lift and carry weights under 20 pounds, and travel with a change in position every 2 hours.

The opinions of nonexamining state agency reviewers regarding Kittelson's ability to work mirrored the assessments of the treating doctors who examined her.

At the first hearing, Kittelson, her husband, and a vocational expert testified. As we noted, the ALJ upheld the denial of benefits. The Appeals Council vacated the decision and remanded for further consideration of Dr. Desmonde's psychological opinion and to obtain additional evidence pertaining to Kittelson's depression.

At the second hearing, in June 2007, both Kittelson and a vocational expert testified. Kittelson reported being in constant pain since 2003 and discussed her dwindling participation in dog shows and infrequent assistance with her husband's business. She also explained that she rarely saw a doctor because she lacked health insurance. She asserted that she was incapable of full-time employment because she could not sit upright for extended periods, would probably fall asleep, and had memory and concentration problems. The vocational expert testified that she was familiar with Kittelson's record, and then, in response to the ALJ's hypothetical, she concluded that a woman with Kittelson's educational and vocational background and impairments who was limited to light work would not be able to do any of Kittelson's past work. But she testified that hundreds of other jobs in the local economy would be available. In response to additional hypotheticals, she testified that there were jobs available--such as surveillance system monitor and charge account clerk--if the person needed a 1- to 5-minute break after sitting or standing for 45 minutes and was limited to sedentary work.

The ALJ evaluated Kittelson's claim under the familiar five-step analysis, 20 C.F.R. §§ 404.1520, 416.920. He determined that Kittelson had not engaged in substantial gainful activity (step one); suffered from severe impairments as a result of fibromyalgia, degenerative disc disease of the lumbar spine, obesity, and carpal tunnel syndrome (step two); did not have any impairments that met or equaled the listings (step three); retained the residual functional capacity to do light work if able to change from a standing to seated position for 1 to 5 minutes at least every 45 minutes (step four); and could no longer perform her former job, but could do other jobs and thus was not disabled (step five). He also found that Kittelson's statements about the intensity, persistence, and limiting effects of her impairments were not entirely credible and out of proportion to the objective evidence in the record.

The Appeals Council denied Kittelson's request for further review of the ALJ's revised decision. The district court, on Kittelson's appeal, noted several errors in the ALJ's decision but found them to be harmless and affirmed.

We will affirm the denial of disability benefits so long as the ALJ's decision is supported by substantial evidence, meaning evidence "sufficient for a reasonable person to accept as adequate to support the decision," and we will not reweigh evidence or substitute our judgment for that of the ALJ. *Ketelboeter v. Astrue*, 550 F.3d 620, 624 (7th Cir. 2008) (internal citation omitted). The ALJ must build a "logical bridge" between the evidence and his conclusions. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (internal citation omitted). Even if "reasonable minds could differ" about whether a claimant is disabled, we will affirm the ALJ's denial of benefits so long as the decision has adequate support. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## 1. Adverse credibility finding

On appeal, Kittelson begins by contending that the ALJ erred by finding her not credible. She finds two faults with the ALJ's analysis. First, she argues that his adverse credibility determination did not take into account her obesity and her medications, in violation of the regulations. In making a credibility determination, the ALJ must consider the claimant's pain level, medications, treatment, daily activities, and limitations, 20 C.F.R. § 404.1529(c), and must justify his finding with "specific reasons supported by the record." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

Contrary to Kittelson's contention, the ALJ considered the required matters under section 404.1529(c) and referenced the record to justify his conclusion. He made several references to both her medications and obesity in his chronological summary of her health history before concluding that her complaints were "grossly out of proportion" to the objective findings. He did not *specifically* discuss how Kittelson's obesity and medications factored into his assessment of her credibility, but his summary of her medical record reflects that he was aware of and considered them, so any error in not highlighting them was harmless. *See Prochaska v. Barnhart*, 454 F.3d 731, 736-38 (7th Cir. 2006) (failure to discuss impact of obesity was harmless error where ALJ relied on record that addressed it).

Second, Kittelson maintains that the ALJ's adverse credibility determination was erroneous because it was based on a mischaracterization of her daily activities. He concluded that she remained "busy" in and out of the home, citing her participation in dog shows and assistance to her husband in his business. Kittelson argues that the ALJ ignored

how she accomplished activities and the amount of rest that she required following any exertion.

The ALJ's adverse credibility finding was not perfect. But it was also not "patently wrong." *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Because an ALJ is supposed to consider a claimant's limitations in performing household activities, the ALJ erred in failing to acknowledge that Kittelson did not attend dog shows or assist her husband on a *daily* basis, and that when she was active she took frequent breaks. *See Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). But he specified another, valid reason for finding her not credible: the discrepancy between her testimony of having memory and concentration problems and being unable to work full-time and the evaluations of doctors who found no objective evidence of such impairments, and--with the exception of Dr. Desmonde-- concluded that she would be able to perform light work if allowed to rest or change position. This discrepancy provided a sufficient basis for the ALJ's adverse credibility determination.

### 2. Severity of Kittelson's depression

Kittelson next challenges the ALJ's step-two finding that her mental impairment (depression) was not severe. She makes several arguments for why this conclusion was incorrect. First, she argues that the ALJ erroneously dismissed the ongoing care for depression that she received from Kreuger, Dr. White's assistant. Specifically, she faults the ALJ for not discussing Kreuger's opinion as to the severity of her depression and how it affects her ability to work.

The information that Kittelson faults the ALJ for disregarding is not in the record. Although Kreuger treated Kittelson consistently and his opinion might have been entitled to controlling weight, *see* 20 C.F.R. § 404.1527(d)(2); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008), he did not provide any opinions for the ALJ to weigh. His only assessment of her depression was to note that it existed and to renew her prescriptions.

Second, Kittelson maintains that the ALJ failed to consider how her lack of insurance impeded her ability to seek treatment. She relies on SSR 96-7p, which prohibits an ALJ from drawing negative inferences about a claimant's failure to seek treatment without first considering explanations for the failure, including inability to afford regular treatment. *See* 1996 WL 374186 at *7-8; *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009).

As the district court found, the ALJ did err by not considering the impact of Kittelson's lack of health insurance, but this error was harmless because he also based his

assessment on the absence of evidence of serious functional limitations due to depression or episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(3). The ALJ based this conclusion on the activities Kittelson reported in her hearing testimony, her cooperation and engagement with medical evaluators, and the lack of findings of memory or concentration deficits in her mental health evaluations. Another ALJ might have determined that Kittelson's limitations were moderate or even severe, but substantial evidence supports the ALJ's conclusion and he "rationally articulated" its basis. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). Accordingly, the ALJ's error in failing to consider the significance of Kittelson's lack of health insurance was harmless.

Third, Kittelson argues that in determining the severity of her depression, the ALJ improperly ignored the opinion of Dr. Desmonde, the only mental health specialist to evaluate her. Dr. Desmonde found that Kittelson might lack the capacity to tolerate the stress of competitive employment. Kittelson relies on *Wilder v. Chater*, 64 F.3d 335 (7th Cir. 1995), where we determined that the ALJ unreasonably disregarded the testimony of an independent psychiatrist to conclude that the claimant had not been severely disabled by depression until after her last insured date.

But unlike the ALJ in *Wilder*, who erroneously relied on "unimpressive" facts and conjecture to contradict the psychiatrist's opinion, 64 F.3d at 337-38, here the ALJ rejected Dr. Desmonde's conclusion because it was not supported by objective findings or Kittelson's testimony and was based on Kittelson's chronic pain, not her depression. In light of these explanations and their foundation in the record, the ALJ did not err in giving little weight to Dr. Desmonde's opinion. *See White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005).

### 3. Residual functional capacity finding

Kittelson next contends that the ALJ did not sufficiently articulate the basis for his residual functional capacity (RFC) finding or consider all of the evidence relevant to this determination. She asserts that the ALJ's opinion lacks a "logical bridge" between the evidence and his conclusion that she could do light work if given a break of no more than 5 minutes every 45 minutes because, she says, he never explained the basis for his reasoning or pointed to anything in the record that supported it.

The ALJ sufficiently justified his conclusion about Kittelson's RFC. He outlined the diagnoses of various doctors who evaluated Kittelson and explained that his conclusion "placed great weight" on Dr. Studt's opinion, which he believed was generally consistent with the findings of Dr. Bodeau and Dr. Fu and with the state examiners' conclusions that

Kittelson could perform light work. The ALJ did not explicitly state that he based his imposed limitation (a change in position for 1 to 5 minutes every 45 minutes) on Dr. Studt's conclusion that Kittelson could sit and stand for 30 to 45 minutes at a time with a change in position. But given the ALJ's summary of Dr. Studt's findings and statement about his heavy reliance on Dr. Studt's conclusions, he sufficiently built a "logical bridge" between the evidence of Kittelson's impairments and his RFC finding.

Kittelson also argues that the ALJ did not discuss how her obesity affected the RFC, in violation of SSR 02-1p. She concedes that in *Prochaska*, 454 F.3d at 736-37, we held that a similar error may be harmless, but she maintains that her case is distinguishable because her medical records specifically recognize that her obesity impacts her other impairments. For example, in his examination notes Dr. Studt stated that he believed Kittelson's obesity exacerbated her fatigue and mobility problems.

Although it is troubling that the ALJ failed to discuss the impact of Kittelson's obesity, the ALJ's failure to do so was harmless because he based his RFC on the limitations identified by doctors--like Dr. Studt--who specifically noted Kittelson's obesity, so it was "factored indirectly" into his analysis. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

### 4. Hypothetical question to vocational expert

Finally, Kittelson argues that the ALJ's hypothetical question to the vocational expert was incomplete and accordingly his step-five determination was incorrect. She contends that the ALJ failed to incorporate into his hypothetical her difficulty bending and squatting and her obesity. An ALJ's hypothetical questions to a vocational expert usually must include all limitations supported by medical evidence in the record, but there is an exception when the expert independently learned of the limitations and presumably accounted for them. *Steele*, 290 F.3d at 942.

The ALJ's hypothetical was adequate because the record does not support a bending and squatting limitation, and the failure to include an obesity limitation was harmless error. Kittelson's contention about her problems bending and squatting is based entirely on Dr. Studt's examination notes, but Dr. Studt's prognosis did not include any bending or squatting limitations, so the ALJ was not required to include them in his hypothetical. *See Steele*, 290 F.3d at 942. In contrast, the record did show that Kittelson was obese and her obesity impacted her mobility and energy level. But the vocational expert testified that she had reviewed the record, so she knew that Kittelson was obese and presumably took that into account when responding to the ALJ's hypothetical. Further, the ALJ's hypothetical

was drawn from the limitations suggested by doctors who noted Kittelson's obesity.  Her obesity therefore was indirectly factored into the hypothetical, and the ALJ's failure to explicitly include it was harmless error.  *See Skarbek*, 390 F.3d at 504.

For these reasons, the judgment of the district court is **AFFIRMED**.