In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3284

BRADLEY M. SHIDELER,

*Plaintiff-Appellant*,

*v.*

MICHAEL J. ASTRUE, Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 10 CV 384—**Robert L. Miller, Jr.**, *Judge.*

ARGUED FEBRUARY 15, 2012—DECIDED JULY 20, 2012

Before POSNER, FLAUM, and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* Bradley Shideler suffers from *osteogenesis imperfecta*, also called "brittle bone disease." In 2006, he applied for Social Security Disability Insurance benefits, and after holding an evidentiary hearing, the Administrative Law Judge ("ALJ") found that despite Shideler's limitations, there were a sufficient number of jobs in the regional economy available to a person with his restrictions, and denied his application. When

the Appeals Council denied review, the ALJ's decision became the final decision of the Social Security Commissioner, and Shideler sought relief from the federal district court. The district court affirmed the Commissioner's decision, and Shideler now appeals to this court. Because there is substantial evidence in support of the decision to deny benefits, we affirm.

## I.

Bradley Shideler suffers from *osteogenesis imperfecta*, a genetic disorder known colloquially as "brittle bone disease." Shideler applied for Social Security Disability Insurance benefits in October 2006 under Title II of the Social Security Act, 42 U.S.C. § 423(d), alleging a disability onset date of June 30, 1995. His date last insured was March 31, 2000. The Social Security Administration denied his application, and Shideler requested an administrative hearing.

The hearing took place on March 24, 2009. Shideler was represented by counsel, and Shideler, Shideler's roommate, and a vocational expert all testified at the hearing. At the time of the hearing, Shideler was 48 years old and lived in Angola, Indiana. Shideler testified that he suffered 55 fractured bones over the course of his life and that his back pain was a constant 10 out of 10 on the pain scale. He indicated that he used over-the-counter ibuprofen and glucosamine to manage his pain, though at one point he was using Ultram and liquid codeine. Regarding his capacity to take care of himself, Shideler testified that he could take care of his personal needs

(such as bathing and showering) and was able to drive. Although he could not cook, he did take care of his own laundry. He stated that he could reach forward with his arms, but not around or behind him, and that it was difficult to use utensils such as forks due to his hands cramping. Shideler testified that he could not stand for more than ten minutes at a time, could only walk for ten to fifteen minutes before needing to sit down, and could only sit for twenty minutes at a time. He indicated that he needed to lie down for at least an hour several times a day. Shideler stated that he worked as a carpet cleaner for approximately four months in 1997 and later as a rental consultant for three years.

Shideler's roommate also testified at the hearing. He stated that it was difficult for Shideler to function or lift anything (such as a crock pot) and that Shideler constantly broke his fingers. Shideler added that his fingers were bent badly and that when he broke a finger he usually set it himself. Dr. Robert Barkhaus testified as a vocational expert at the hearing. His testimony indicated that Shideler's past work experience (three years as a rental consultant, and four months as a carpet cleaner) was light and unskilled. The ALJ asked the vocational expert to assume a person of Shideler's age, education, and work experience who could perform a restricted range of sedentary work with the following restrictions: never climb ladders, ropes, or scaffolds and only occasionally climb ramps or stairs; never crouch, kneel or crawl; never perform overhead reaching; avoid exposure to extreme heat and cold; and perform work that includes occasional, but not frequent, use of his

fingers. With those restrictions, the vocational expert testified that a person with these restrictions could perform such representative jobs as that of a credit clerk (approximately 100 jobs existing in the Northeastern Indiana region); an order clerk (approximately 150 jobs in the region); and a telephone clerk (approximately 100 jobs in the region).

The ALJ then added several restrictions to the above list, asking the vocational expert what jobs would be available if the list above included a "sit/stand" option, occasional but not frequent fingering, and some reaching forward. The vocational expert testified that the additional restrictions would eliminate most sedentary jobs that the claimant could perform, ultimately leaving a surveillance clerk position as the only available job. He estimated that approximately 150 surveillance clerk positions existed in the regional economy. The ALJ further asked if there were any jobs available for a person with the above restrictions who was also unable to work a full eight-hour day without needing two to three additional breaks over and above the normal thirty-minute lunch break and two fifteen-minute breaks. The vocational expert testified that there would be no jobs available under those restrictions.

Despite his statement at the hearing that he had broken at least 55 bones over the course of his life, the record shows that Shideler had only four surgeries—two surgeries in 1973 and 1974 repairing broken elbows, a surgery in 1976 reconstructing Shideler's right foot, and a surgery on his left knee in 1999. The 1999 surgery,

which was performed prior to Shideler's date last insured in March 2000, was necessitated by an injury Shideler sustained in a motorcycle accident. Shideler made a full recovery from that surgery and his surgeons released him to work without restrictions. The surgeon noted that Shideler suffered from *osteogenesis imperfecta* but had not had any fractures for several years. Indeed, subsequent appointments with the surgeon indicated that Shideler recovered very well from this surgery, and one report from December 1999 showed that Shideler had no pain and was not taking any pain medication.

The record contains no evidence that Shideler visited any doctors between May 2000 and December 2006. On December 19, 2006, a state physician completed a Physical Residual Functional Capacity Assessment of Shideler, which stated that, in the doctor's opinion, Shideler could perform medium work and could even occasionally climb scaffolds or ladders. Shideler next saw an orthopedic surgeon shortly after his hearing in April 2009, since he had recently been approved for a state-sponsored health plan. At this appointment, the doctor diagnosed Shideler with scoliosis of the lower spine and noted that Shideler had deformities consistent with *osteogenesis imperfecta*, but made no mention of other issues such as problems with Shideler's fingers or hands. The doctor did note that Shideler complained of "kind of intermittent" thoracic back pain and that he described his pain as a dull ache that worsened with activity, which contradicts Shideler's testimony at his hearing that his pain was a constant 10 out of 10. The

doctor's report indicated that Shideler treated his pain with over-the-counter anti-inflammatory medication, and prescribed Mobic (a non-steroidal anti-inflammatory) for Shideler's pain. The doctor recommended six to eight sessions of physical therapy for Shideler and prescribed a home exercise and spinal stabilization program, but did not recommend any surgery for Shideler and released him to work without any restrictions.

The ALJ gave the parties the opportunity to supplement the record following the March 2009 hearing, and Shideler supplemented the record with the results from his appointment with an orthopedic surgeon in April 2009. In May 2009, the ALJ issued a decision denying benefits because she found that Shideler was not disabled from 1995 through March 31, 2000, his date last insured, within the meaning of the Social Security Act. The ALJ's decision followed the standard five-step sequential evaluation specified in 20 C.F.R. § 404.1520. The ALJ concluded that "the claimant's and his witness' statements concerning the intensity, persistence and limiting effects of [his] symptoms are not persuasive because the statements are not supported by the medical and other evidence of record."

In reaching her decision, the ALJ granted Shideler a large number of restrictions, concluding

> that, through the date last insured the claimant had the residual function capacity to perform sedentary work as defined in 20 CFR 404.1567(a) but . . . that the claimant can never crouch, kneel, crawl or climb ladders, ropes, or scaffolds; can only occa-

sionally climb ramps or stairs; cannot do any overhead reaching; is limited to frequent but not constant fingering of small objects; must avoid exposure to extremes of cold, heat, humidity and unprotected heights. In addition, the claimant is limited to simple, routine tasks.

Even with these restrictions, the vocational expert had testified that a significant number of jobs existed in the regional economy that could be performed by someone with Shideler's capacity as of his date last insured in March 2000, including that of a credit clerk, an order clerk, and a telephone clerk. Accordingly, based on her review of Shideler's testimony, his roommate's testimony, the medical and other record evidence, and the vocational expert's testimony, the ALJ concluded that a finding of "not disabled" was appropriate, and denied disability insurance benefits.

Shideler sought review, but the Appeals Council denied Shideler's request in July 2010, making the ALJ's decision the final decision of the Commissioner of Social Security. Shideler then brought an action in the district court seeking judicial review of the decision, and the district court affirmed the Commissioner's decision in August 2011. This appeal followed. Shideler challenges the ALJ's conclusion that he was not disabled prior to March 31, 2000, arguing that the ALJ's findings were not supported by substantial evidence.

II.

We review de novo the district court's judgment affirming the Commissioner's decision. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). In assessing the ALJ's decision, we apply a deferential standard, reviewing the decision "to see if it is supported by 'substantial evidence.'" *Id.* (quoting 42 U.S.C. § 405(g)). Substantial evidence "means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). We do not reweigh the evidence or substitute our own judgment for that of the ALJ; if reasonable minds can differ over whether the applicant is disabled, we must uphold the decision under review. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). In rendering her decision, the ALJ must "build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal quotations omitted).

Shideler challenges both the ALJ's finding on his credibility and the ALJ's finding that Shideler could perform a significant number of jobs despite the limitations caused by his impairments. We first consider whether the ALJ reasonably evaluated Shideler's credibility. Because the ALJ is "in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004) (quotations omitted). When evaluating

credibility, the ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (internal quotations omitted). On review, we "merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). We also note that whatever condition the claimant may be in at his hearing, the claimant must establish that he was disabled before the expiration of his insured status (in Shideler's case, March 31, 2000) to be eligible for disability insurance benefits. *See, e.g.*, 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. § 404.320(b)(2); *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011) (the claimant "had social security disability coverage only until the end of 2003; if she was not disabled by then, she cannot obtain benefits even if she is disabled now").

Shideler contends that the ALJ failed to consider his prior work and medical histories and unreasonably discounted his testimony that he needs to lie down several times per day. This argument is unavailing. In evaluating Shideler's credibility, the ALJ considered a broad range of factors, specifically focusing on his medical history. The ALJ considered Shideler's testimony concerning his pain in his back and hands, as well as his other symptoms; the types of medication he used to treat his pain; his medical history, including his claim of having suffered 55 broken bones in his lifetime, a number that is unsupported by the medical evidence in the record; the fact that, prior to his 1999 injury to his knee in a motorbike accident, he had had no fractures

for several years; his treatment history, including the fact that he was released to work without restrictions in 2000 after his knee surgery and in 2009; his daily living activities and the limitations about which he testified; the factors that aggravated his pain (temperature and humidity extremes) and the factors that alleviated his pain (lying down on a couch several times a day). The ALJ's considerations specifically took into account Shideler's testimony, as well as the testimony of his roommate, and compared it to the medical and other record evidence in reaching her decision.

Also, contrary to Shideler's assertion, the ALJ considered his work history and specifically found that he had not engaged in substantial gainful activity from his alleged onset date of June 30, 1995 through his date last insured of March 31, 2000. The ALJ took these factors into account when making her decision and granted Shideler numerous restrictions, finding that he was capable of performing only a restricted range of sedentary work through his date last insured. The ALJ also considered Shideler's assertion that he needed to lie down several times per day[1] to alleviate his pain, but

---

[1] Shideler testified that he needed to lie down at least four or five times per day. The ALJ in her decision incorrectly found that Shideler testified that he needed to lie down five or six times per day. Shideler claims that this finding somehow made it seem like Shideler was exaggerating his need for rest and caused to the ALJ to discredit his testimony, but we find no evidence of that. Regardless of however many times Shideler

(continued...)

ultimately found that "the claimant's medically deter-
minable impairments could reasonably be expected to
cause the alleged symptoms; however, the claimant's
and his witness' statements concerning the intensity,
persistence and limiting effects of these symptoms are
not persuasive because the statements are not sup-
ported by the medical and other evidence of record." The
ALJ connected this conclusion to the record evidence in
a detailed analysis, belying any claim that she failed
to build a logical bridge between the evidence and her
conclusion. *See Johnson v. Barnhart*, 449 F.3d 804, 806 (7th
Cir. 2006) ("Despite the inherent difficulty of evaluating
testimony about pain, an administrative law judge will
often have solid grounds for disbelieving a claimant
who testifies that she has continuous, agonizing pain.").

To be sure, the ALJ's decision was not perfect. It is
unclear why, for example, the ALJ posed so many ques-
tions about the condition of Shideler's fingers and hands
during the hearing, yet made only brief mention of the

---

[1] (...continued)

claimed he needed to lie down during the day, the objective
medical evidence in the record compelled the ALJ to discredit
his testimony, and any misstatement on her part did not affect
the outcome of the proceeding. *See, e.g.*, *Shramek v. Apfel*, 226
F.3d 809, 814 (7th Cir. 2000) (affirming the ALJ's decision
despite errors because they did not affect the outcome of the
proceeding).

testimony in her decision.[2] She could have pointed out that, whatever the current condition of Shideler's hands, prior to his date last insured in March 2000 he was able to operate a motorcycle[3] and work as a carpet cleaner. She could have referenced the fact that the evidence did not support Shideler's assertion that he needed to lie down several times per day, though we note that an ALJ's credibility findings need not specify which statements were not credible. *See Jens v. Barnhart*, 347 F.3d

---

[2] The ALJ did note that Shideler's representative "stated that the claimant's hands were crumpled due to multiple fractures, but offered no evidence of treatment or objective medical findings related to the claimant's hands even though the undersigned allowed him additional time after the hearing to submit medical evidence." She also stated that there "was no discussion of significant issues related to the claimant's hands in the 1999 and 2000 medical evidence" and pointed out that Shideler was released to work without any restrictions on these occasions. At any rate, the state of the claimant's hands at his hearing was irrelevant; the question is whether he was disabled prior to March 31, 2000, and the record evidence indicates otherwise.

[3] There are inconsistencies on this point. Shideler testified that his knee injury was sustained when a friend's motorcycle fell off a loading ramp and struck his knee. However, Shideler's surgeon noted in a report written shortly after the injury that Shideler "was riding his dirt bike and sustained what is described as a hyperextension type injury." This inconsistency further calls Shideler's credibility into question, and bolster's the ALJ's finding that Shideler's testimony was not entirely credible.

209, 213 (7th Cir 2003); *see also Simila*, 573 F.3d at 517 (stating that an ALJ "need not mention every strand of evidence in her decision"). The decision also contains a considerable amount of boilerplate language and recitations. Despite these shortcomings, the ALJ adequately evaluated Shideler's credibility, and we see no reason to reverse. *See, e.g.*, *Kittleson v. Astrue*, 363 Fed. Appx. 553, 557 (7th Cir. 2010) ("The ALJ's adverse credibility finding was not perfect. But it was also not 'patently wrong.'") (quoting *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004) ("The credibility determinations of an ALJ are entitled to special deference and we see no reason to overturn her findings.").

We next turn to the ALJ's decision that Shideler was able to perform a range of sedentary work and was therefore not disabled. The focus here is on the fact that Shideler needed to show that he was disabled as of his date last insured. The ALJ was sympathetic to Shideler's condition at his hearing in 2009, and she stated that she was looking for something to "connect all the pieces together" to find Shideler disabled prior to March 31, 2000. Unfortunately, the objective medical evidence showed that Shideler was not disabled by his date last insured. He was able to ride a dirt bike in 1999, and while he injured himself doing so, he made a full recovery from that injury and was released to work without any restrictions. In the years prior to 2000, no evidence exists that he had broken any bones, and the doctor's report prior to his knee surgery in 1999 indicated that he had not broken any bones for some time. When

asked why Shideler had so few medical records dating from the time of his alleged disability onset date in 1995, Shideler's representative agreed that part of the problem was "obviously that he didn't have any medical insurance" and that Shideler's family doctor did not maintain adequate records. But Shideler was able to have surgery in 1999 despite having no insurance. His surgeon noted that Shideler would come back to see him again if he continued to have problems post-recovery, and the ALJ specifically left the record open for three weeks after the hearing to allow Shideler more time to supplement it with medical records. *See, e.g.*, *Scheck*, 357 F.3d at 702 (stating that "the hearing transcript indicates that the ALJ attempted to make as complete a record as possible" by giving the claimant an additional 30 days to obtain additional medical records).

The ALJ also considered Shideler's testimony regarding his difficulties performing daily living activities (though Shideler admitted he can still drive, an act which requires some manual dexterity with one's hands) as well as his past work history, finding that he could no longer work as a carpet cleaner, as that would be too physically demanding for him now. She asked about the medications he used to treat his pain and considered the testimony of his roommate. In addition to the objective medical evidence in the record, she considered all of the factors required in the Code of Federal Regulations, including daily living activities; the duration, frequency, and intensity of Shideler's pain; factors that precipitate and aggravate his condition; the types of treatment he received; the dosage, effectiveness,

and side effects of the medications he takes; and the functional restrictions on Shideler. *See id.* at 703 (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). The ALJ ultimately found, based on the vocational expert's testimony regarding the range of sedentary jobs available to someone in Shideler's condition, that Shideler "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of 'not disabled' is, therefore, appropriate . . . ." The ALJ here built "a logical bridge from the evidence to [her] conclusion," *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005), and her decision was supported by substantial evidence.

## III.

The ALJ's reasons for finding Shideler's testimony to be not fully credible are sound and are not "patently wrong." Whatever Shideler's current condition is, the ALJ's decision finding that Shideler was not disabled as of March 31, 2000 is supported by substantial evidence. While the members of the court sympathize with Shideler due to his condition, that condition did not rise to the level of a disability prior to his date last insured. We AFFIRM.