NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 17, 2015
Decided December 10, 2015

**Before**

JOEL M. FLAUM, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-1825

| | |
|---|---|
| TODD L. MICHALEC,<br>  *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Central District of Illinois. |
| *v.* | No. 14-1005 |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br>  *Defendant-Appellee*. | Joe Billy McDade,<br>*Judge*. |

## O R D E R

Todd Michalec was denied disability insurance benefits after claiming that severe osteoarthritis, cervical spine degeneration, and other ailments left him incapable of working. An administrative law judge found that Michalec still had the residual functional capacity to perform sedentary work during the insured period. On judicial review, Michalec argues that the ALJ overlooked critical evidence and made a patently erroneous credibility assessment. We disagree. Substantial evidence supports the ALJ's decision, so we affirm.

When he was 45 years old, Michalec applied for benefits. He claimed an onset date in June 2007 and a last-insured date in December 2010. He said he was disabled due to severe degenerative osteoarthritis of the cervical spine and a previous lumbar

laminectomy.[1] Before his onset date, Michalec had worked for a decade as a youth supervisor counselor at a juvenile detention facility and then for four years as a part-time sales clerk. According to Michalec, he last worked in 2005, when his employer went out of business.

After two trips to the emergency room for worsening neck and back pain in May 2007, Michalec sought treatment from a rehabilitation specialist, Dr. Omprakash Sureka. Dr. Sureka noted Michalec's complaints about numbness and tingling of both hands, weakness in the right arm, limited range of motion of the spine and shoulders, and pain radiating from the neck and upper back into the shoulders and upper arms. According to Dr. Sureka, follow-up x-rays showed "severe osteoarthritis involving the shoulder" and "mild multi level degenerative end plate irregularity" of the cervical spine, with a slight displacement of vertebrae at the C3-C4 level and some narrowing of the vertebrae at the C3-C4 and C4-C5 levels. Dr. Sureka prescribed physical therapy and kept Michalec on his existing pain medications, including Vicodin and a fentanyl patch. For the next year, Michalec was treated primarily by his general-care provider for pain, depression, venous insufficiency,[2] and other conditions.

At one appointment in August 2008, Dr. Sureka observed that Michalec was experiencing headaches, severe neck and shoulder pain, diminished sensation in two fingers, limited range of motion in his spine and shoulders, normal muscle strength, normal reflexes, and moderate muscle spasms around his spine. Although Dr. Sureka prescribed more physical therapy, he declined Michalec's request for more pain medication.

Around this time, Michalec began telling his treating physicians that he was working as a personal trainer, a fact that would prove critical to the ALJ's later adverse

---

[1] Laminectomy is surgery that creates space by removing the lamina—the back part of the vertebra that covers the spinal canal. Also known as decompression surgery, laminectomy enlarges the spinal canal to relieve pressure on the spinal cord or nerves. *Laminectomy*, MAYO CLINIC, www.mayoclinic.org/tests-procedures/ laminectomy/basics/ definition/prc-20009521 (visited Nov. 19, 2015).

[2] Venous insufficiency is a problem with the flow of blood from the veins of the legs back to the heart. *Venous Insufficiency*, WEBMD, www.webmd.com/a-to-z-guides/ venous-insufficiency-topic-overview (visited Nov. 19, 2015). It can cause swelling and discoloration of the feet and ankles. See *id.*

credibility finding. Michalec initially told Dr. Sureka in May 2007 that he was unemployed, but he updated the doctor in 2008 and 2009 that he was working as a personal trainer at Fitness America. (In 2010, Michalec also told his general practitioner, Dr. Michael Whitford, that he was a self-employed sports trainer.)

In August 2009, Dr. Brent Johnson, an orthopedic surgeon, recommended that Michalec undergo replacement surgery on both shoulders. He cautioned Michalec, however, that he could not "continue to be active and do significant weightlifting with shoulder replacements." Michalec opted for corticosteroid injections instead of surgery.

In connection with Michalec's application for benefits, an agency physician, Dr. Richard Smith, filled out a Physical Residual Functional Capacity Assessment for Michalec and opined that Michalec could lift ten pounds frequently, sit or stand for six hours out of an eight-hour workday, and reach for no more than one-third of the workday.

The Social Security Administration denied Michalec's application initially and again on reconsideration. In July 2012, Michalec appeared before an ALJ along with a non-attorney representative and testified about his work history and physical limitations, including that he had not worked since June 2007, his alleged onset date. The ALJ asked him to explain why he told two different doctors that he had been working as a personal trainer. Michalec denied ever having worked as a personal trainer. He said that he had lied to his doctors because of the embarrassment he felt about being unemployed. Michalec also asserted that his physical limitations had worsened since he had applied for benefits. He did not, however, address his limitations during the insured period.

A vocational expert also testified at the hearing about the work Michalec could do. The ALJ asked the expert to consider hypothetical limitations for routine, sedentary work not requiring climbing or hazardous conditions, involving no more than occasional reaching to shoulder level and no more than frequent fine manual manipulation. The expert opined that such an individual would not be able to perform Michalec's past relevant work but would be able to work as an addressing clerk, optical assembler, or circuit-board assembler. The expert clarified that these jobs would, to varying degrees, accommodate a need to alternate between sitting and standing.

The ALJ concluded that Michalec had not been disabled during the insured period. Applying the required five-step analysis, see 20 C.F.R. § 404.1520(a)(4), the ALJ determined that during the relevant 2007–2010 period: (Step 1) Michalec had not engaged

in substantial gainful activity; (Step 2) his osteoarthritis of the knees and shoulders, history of knee and lumbar surgeries, cervical spine degeneration, venous insufficiency, and obesity were severe impairments; (Step 3) none of those impairments equaled a listed impairment leading to an automatic finding of disability; (Step 4) he had the residual functional capacity to perform sedentary work, provided that it did not require him to perform constant fine manipulations or to reach to shoulder level more than occasionally; and (Step 5) he was capable of performing either his past relevant work as a correctional treatment specialist or the sedentary jobs identified by the vocational expert. In reaching this conclusion, the ALJ explained that she questioned Michalec's credibility, particularly with regard to his explanation for supposedly lying to his doctors about working as a personal trainer. She also noted that no treating physician had assessed Michalec as being "unable to perform most work activities of sedentary duty work during the period of time under consideration." The Appeals Council denied Michalec's request for review. The district court upheld the ALJ's decision.

On appeal, Michalec asserts that the ALJ's decision is so "poorly articulated as to prevent meaningful appellate review" because the ALJ did not discuss his depression, chronic tension headaches, or an orthopedic specialist's opinion that he needed replacement surgery on both shoulders. As the Commissioner points out, Michalec forfeited this argument by failing to present it to the district court. *See Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013). In any event, Michalec does not attribute to these impairments any specific functional limitations that he believes the ALJ should have considered in formulating the residual functional capacity finding.

Michalec next argues that the ALJ should have included in her residual functional capacity analysis additional physical limitations based on his knee problems and venous insufficiency. Michalec forfeited these arguments, as well, by failing to raise them in the district court. See *Schomas*, 732 F.3d at 708. He also failed to cross-examine the vocational expert about these limitations. See *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004). Michalec has not explained why his knee problems—including arthritis, a torn meniscus, and a torn ACL—would limit his ability to perform even sedentary work. Michalec suggests that the ALJ should have incorporated into her residual functional capacity analysis a doctor's recommendation that he elevate his legs higher than his heart for twenty minutes four times per day. That recommendation came two weeks after Michalec's disability insurance expired, so it is irrelevant for present purposes. See *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012). Michalec cites no evidence showing that his venous insufficiency posed any functional limitation during the relevant time period.

We turn to arguments that have not been forfeited. Michalec faults the ALJ for not addressing medical evidence that he says undermines her conclusion that he could occasionally reach to shoulder level and frequently perform "fine manipulations" with both hands. Michalec says the ALJ should have considered a 2009 MRI showing cervical disc protrusions and moderate nerve cord compression and x-rays showing severe osteoarthritis of the shoulders. In formulating Michalec's residual functional capacity, however, the ALJ relied on Dr. Smith's report, which relied on the MRI and x-ray results, to support his conclusion that Michalec's exertional limitations were modest. As the ALJ noted, none of Michalec's treating physicians offered contrary opinions about his ability to perform most of the activities of sedentary work. See *Filus v. Astrue*, 694 F.3d 863, 867 (7th Cir. 2012) (ALJ did not err in relying upon uncontradicted opinions from reviewing physicians). The only evidence contradicting Dr. Smith's opinion about Michalec's exertional limitations was his own subjective testimony, which the ALJ discredited based on Michalec's credibility problems.

Finally, Michalec challenges the ALJ's adverse credibility finding on grounds that his statements to his doctors about working as a personal trainer could be explained by his depression and embarrassment about being unemployed. The ALJ acknowledged Michalec's potential unease in not wanting to admit he was unemployed; what the ALJ found incredible was that Michalec would inform two physicians treating him for allegedly debilitating pain that he was performing such vigorous work as personal training in physical fitness. In light of the inconsistencies between Michalec's statements to his doctors and his testimony at the hearing, Michalec has not shown that the ALJ's credibility assessment is patently erroneous. See *Murphy v. Colvin*, 759 F.3d 811, 815–16 (7th Cir. 2014).

Because substantial evidence supports the ALJ's decision and the ALJ made no reversible legal errors, the judgment of the district court is AFFIRMED.