NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 2, 2020
Decided July 16, 2020

**Before**

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 19-2582

| | |
|---|---|
| AIMEE M. APKE, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 2:18-cv-02098-EIL |
| ANDREW M. SAUL, Commissioner of Social Security, *Defendant-Appellee*. | Eric I. Long, *Magistrate Judge*. |

**O R D E R**

Aimee Apke, a 37-year-old former cashier, nurse assistant, and in-home health care provider, suffers from fibromyalgia and other physical and mental health impairments. She applied for disability insurance benefits and supplemental security income claiming she was unable to work due to chronic pain and severe symptoms from her fibromyalgia. The Social Security Administration denied her applications. Apke timely sought review of the denials, and an administrative law judge determined she was not disabled under the Social Security Act. After finding there was substantial evidence supporting the ALJ's decision, the district court affirmed the denial. We find no error in the consideration of Apke's claim, so we affirm.

## I. Background

Apke was 30 years old in 2014 when she first applied for disability benefits insurance and supplemental security income. She alleged her disability began in October 2010.[1] She formerly worked as a cashier, a nurse assistant, and an in-home health care provider. Shortly after applying for benefits she reported she lived at home with her family and took care of her three children. She bathed them, cooked for them, and attended to their needs. Apke's activities included cleaning the house, washing clothes, washing dishes, driving, shopping in stores for groceries and household items, paying bills, attending church regularly, attending her children's sporting events, and providing primary care for her youngest child who was not yet in school.

Additionally, Apke worked part-time about 20 hours per week answering phones and assisting customers for her father's window business. When she felt pain or fatigue, she was allowed to periodically sit or lay down. Since February 2016, she has maintained a small home-based baking business, working about two weekends per month.

As part of her benefits applications, Apke submitted medical treatment records. The treatment notes from 2011 show she complained of fatigue, back pain, and general all-over pain. She was treated conservatively for mild degenerative disc disease, joint pain, and muscle spasms. In 2012, Apke was diagnosed with fibromyalgia for which she received multiple trigger point injections. She did not require surgery. Over the next several years, Apke was diagnosed with headaches, which were treated with mild medication, and borderline diabetes, which was treated through dietary restrictions. Apke has been treated for mental impairments, including an affective disorder and anxiety. She has not required psychiatric hospitalization or inpatient care.

The Social Security Administration denied Apke's applications initially and again upon reconsideration. Apke, represented by counsel, requested a hearing before an ALJ. Prior to the hearing, Apke's counsel submitted forms from three of Apke's treating physicians: Dr. Alao, Dr. Schue, and Dr. Joag. Each was asked to complete and sign an "abbreviated" residual functional capacity report prepared by Apke's attorney. The report included a checklist for the physicians to complete; it did not include open-ended questions or request the physicians' medical opinions regarding Apke's need to perform light work. These forms required the physicians to opine whether Apke's

---

[1] During her hearing before the ALJ, Apke amended the alleged onset date to July 2012. The date change does not impact our analysis.

subjective complaints were credible. At the hearing, the ALJ heard testimony from Apke and a vocational expert. After the hearing, the ALJ sought the objective medical opinion of Dr. Anne Winkler, a rheumatologist who assessed Apke's ability to perform light work through a series of open-ended questions.

At issue before the ALJ was whether Apke is entitled to disability benefits pursuant to §§ 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, as well as supplemental security income under §§ 1602 and 1611 of the Act, 42 U.S.C. §§ 1381a and 1382.[2] The ALJ found that Apke has severe impairments from fibromyalgia, borderline diabetes, headaches, spine disorder, depression, and anxiety. But the ALJ determined that Apke does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 or 416.926. After assessing Apke's residual function capacity, the ALJ found Apke could perform light work as defined. *See* 20 C.F.R. §§ 404.1567(b) and 416.967(b). Although Apke is unable to perform her previous jobs as a cashier, nurse assistant, or in-home health care provider, the ALJ determined that she can perform a significant number of jobs in the national economy. In reaching this decision, the ALJ considered all of Apke's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical and other evidence, including medical opinion evidence. To the ALJ, Apke's activities, examinations, and treatments were inconsistent with her allegations of disabling symptoms. So in February 2017, the ALJ issued a decision affirming the Administration's denials of benefits to Apke.

The Social Security Appeals Council denied Apke's request for review, making the ALJ's ruling the final administrative decision. Apke timely sued in federal district court seeking judicial review of the administrative decision. *See* 42 U.S.C. § 405(g). The district court granted the Commissioner's motion for summary judgment and affirmed the Administration's denial of benefits.

On appeal, Apke claims the ALJ erred in finding no disability. Specifically, she argues the ALJ failed to properly weigh the medical opinion evidence or consider the severity of her subjective fibromyalgia limitations.

---

[2] "Disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least six months. 20 C.F.R. §§ 404.1505, 416.905.

## II. Analysis

We review the district court's judgment affirming the Commissioner's decision de novo. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). "We will uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (citing *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); 42 U.S.C. 405(g)); *see also Gebauer v. Saul*, 801 Fed. Appx. 404, 408 (7th Cir. 2020) ("This court directly reviews the ALJ's decision to determine whether it applies the correct legal standard and is supported by substantial evidence.") (quoting *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017)). When reviewing the administrative record, we do not "reweigh the evidence or substitute [our] judgment for that of the ALJ." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018); *see also Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (In assessing social security decisions, this court does not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner.") (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

In determining whether a disability exists, the ALJ must consider the claimant's symptoms under a sequential, five-step process. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). First, the ALJ must determine whether the claimant was engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the ALJ must assess whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, the ALJ must evaluate whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. Before moving onto the next step, the ALJ must also consider the claimant's residual functional capacity, which is assessed by considering all claimed impairments including those that are not severe. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. Next, the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, the ALJ must assess whether the claimant is able to do any other work by considering her residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant can do other work, she is not disabled. While "the ALJ must build a logical bridge from the evidence to his conclusion, [] he need not provide a complete written evaluation of every piece of testimony and evidence." *Shideler*, 688 F.3d at 310 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).

Here, Apke does not argue the ALJ failed to complete the required five-step analysis. Instead, she claims the ALJ erred by not giving enough weight to the medical opinion evidence of her treating physicians and by failing to consider the severity of her subjective fibromyalgia limitations. We focus on only these claims.

## A. Medical Opinion Evidence

Under federal regulations, "objective medical evidence" may establish the presence of a medically determinable impairment for disability and social security purposes. *See* SSR 12-2p. Objective medical evidence may be taken from "all of the evidence in the case record, including the person's daily activities, medications, and other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempt to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." SSR 12-2p(IV)(B). The ALJ must give controlling weight to a treating physician's opinion if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)). The regulations provide several factors the ALJ should consider in evaluating a treating physician's opinion: the length, nature, and extent of the treatment relationship; the frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion. 20 C.F.R. § 404.1527(c). "When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001).

As noted above, Apke submitted medical opinion evidence from three treating physicians: Dr. Alao, Dr. Schue, and Dr. Joag. Each completed a form provided by Apke's lawyer with the stated purpose of determining Apke's ability to engage in sedentary level work. The forms defined sedentary work and asked the physician to select a diagnosis and to indicate whether the patient's subjective complaints were credible. The form completed by Dr. Joag also required her to mark check boxes to select Apke's restrictions and predict how frequently Apke might miss work due to her limitations.

The ALJ did not rely on the reports prepared by these three physicians because their expressed opinions merely "rubberstamped" Apke's subjective complaints. *See Dixon*, 270 F.3d at 1178 ("An ALJ may properly reject a doctor's opinion if it appears to be based on a claimant's exaggerated subjective allegations."). Specifically, the ALJ

found the forms failed to ask open-ended questions about Apke's limitations, relied on Apke's reported allegations, assumed Apke would be limited to only sedentary work, and did not include an area for the physicians to describe the type of work Apke was capable of performing. According to the ALJ, the forms did not accurately assess Apke's limitations but rather reflected that the physicians found credible her subjective complaints.

Instead, the ALJ gave probative weight to the opinion of Dr. Winkler, a rheumatologist medical expert whose opinion the ALJ sought after the hearing. Dr. Winkler opined that Apke could perform light work consistent with the limitations in the residual functional capacity report. In giving weight to Dr. Winkler's opinion, the ALJ found that Dr. Winkler's opinion was consistent with Apke's daily activities and was supported by objective medical findings. In considering all the opinion evidence, the ALJ decided that Dr. Winkler's descriptive opinion warranted more weight than the prepared forms signed by the treating physicians.

We find no error with this reasoning and decision by the ALJ. An opinion is entitled to controlling weight only if it is supported both by medical findings and a consistent record. *See* 20 C.F.R. § 404.1527(c)(2). "An ALJ may obtain a medical expert's opinion for several reasons, including to clarify and explain the evidence or help resolve a conflict because the medical evidence is contradictory, inconsistent, or confusing and to determine the claimant's residual functioning capacity." *Gebauer*, 801 Fed. Appx. at 408. The ALJ's reasoning and decision here favoring Dr. Winkler's descriptive evaluation over the "checkbox" approach of Apke's treating physicians was within the ALJ's discretion, *Dixon*, 270 F.3d at 1178, and appropriate. "The use of a medical expert can help ALJs resist the temptation to 'play doctor' … by evaluating medical evidence on his or her own." *Gebauer*, 801 Fed. Appx. at 408; *see e.g., Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (finding the ALJ "impermissibly played doctor and reached his own independent medical conclusion"). As this court has noted recently "[a] medical expert may be especially helpful when evaluating the severity of a condition—like fibromyalgia—marked by subjective and fluctuating symptoms." *Gebauer*, 801 Fed. Appx. at 409.

Apke's treating physicians provided no opinions as to her need to perform light or sedentary work. They only completed forms based on Apke's subjective complaints. The physicians did not opine whether Apke had a disability for social security purposes, and they did not rely upon outside objective medical measures including other attending, reviewing, or examining physicians. In contrast, Dr. Winkler provided

specific reasons why Apke's impairments did not meet or equal any listed impairment, and Dr. Winkler gave examples of specific objective medical abnormalities—including specific medical signs and laboratory findings—to support her assessment. Ultimately, Dr. Winkler concluded that Apke is capable of performing light work. That conclusion is supported by specific, objective medical findings and test results, as well as Apke's daily activities. For these reasons, the ALJ did not err in giving greater weight to Dr. Winkler's medical opinion than to Apke's treating physicians.

### B. Severity of Apke's Subjective Limitations

Courts have recognized that often there is no objective medical evidence indicating the presence or severity of fibromyalgia. *See Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017) (finding that fibromyalgia cannot be measured with objective tests); *see also Criner v. Barnhart*, 208 F. Supp. 2d 937, 951 (N.D. Ill. 2002). In the absence of objective medical evidence, the severity of fibromyalgia symptoms may be evaluated based on the claimant's subjective statements regarding the impairment. *See* SSR 12-2p; SSR 16-3p. When evaluating a claimant's subjective symptoms, the ALJ follows a two-step process. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). First, the ALJ considers whether the claimant's impairments could reasonably be expected to produce the symptoms she alleges, such as pain. 20 C.F.R. §§ 404.1529(b), 416.929(b). Second, the ALJ considers whether the record supports the severity of the symptoms the claimant alleges, such as debilitating pain preventing work. 20 C.F.R. §§ 404.1529(c), 416.929(c). To do so, the ALJ will look to the claimant's reported activity levels and treatment received. This court will "give the ALJ's credibility finding 'special deference' and will overturn it only if it is 'patently wrong.'" *Summers*, 864 F.3d at 528.

The ALJ concluded that Apke's impairments, including her fibromyalgia and back pain, could reasonably be expected to produce her alleged symptoms. But when considering Apke's allegations in light of the full record, the ALJ determined that her symptoms and limitations were not as severe as she claimed. The ALJ adhered to the regulations by considering Apke's own statements regarding her fibromyalgia limitations. Apke's reported daily activities— all of which she performed after her alleged disability onset date—were considered. The ALJ also considered Apke's disclosed medical treatment, noting she received only minor doses of prescription medications and injections. After weighing this evidence, the ALJ concluded that these reported activities and treatments were inconsistent with Apke's allegations of debilitating pain. *See e.g., Gebauer*, 801 Fed. Appx. at 410 (This court affirmed the ALJ's evaluation of claimant's fibromyalgia symptoms when the ALJ relied on "a lack of

evidence… [of] symptoms associated with the pain that would prevent her from performing sedentary work.").

Apke also claims the ALJ failed to fully consider the severity of her fibromyalgia limitations. She points to the opinion of Dr. Darrell Snyder, a state agency consultant, who opined that Apke had "moderate limitations" in her ability to perform activities within a schedule, maintain regular attendance, and be reasonably punctual. But Dr. Snyder concluded that Apke "could tolerate normal work expectations" so long as additional expectations were not placed upon her. Dr. Snyder found no limitations to Apke's overall ability to perform a range of simple work. *See e.g., Urbanek v. Saul*, 796 Fed. Appx. 910, 915 (7th Cir. 2019) ("[T]he agency doctors checked boxes stating [the claimant] had moderate limitations in these two areas, but they concluded in their narrative opinions that he could sustain the basic mental demands of unskilled work if he were limited to performing simple tasks in a structured work environment."). At any rate, moderate limitations, on their own, do not mean a claimant is disabled. *See Capman v. Colvin*, 617 Fed. Appx. 575, 579 (7th Cir. 2015) ("A moderate limitation is not a complete impairment."). Because Apke has failed to show the ALJ's credibility determination was patently wrong, we defer to it.

We conclude the ALJ applied the correct legal standards and supported his decision with substantial evidence. Accordingly, we AFFIRM the judgment of the district court affirming the denial of benefits.