NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 9, 2013
Decided February 5, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-1249

| | |
|---|---|
| ROBERT G. HOYT, JR., <br>     *Plaintiff-Appellant,* <br><br>     *v.* <br><br> CAROLYN W. COLVIN, <br> Acting Commissioner of Social <br> Security, <br>     *Defendant-Appellee.* | Appeal from the United States Court for the Northern District of Illinois, Eastern Division. <br><br> No. 09 C 7895 <br><br> Jeffrey T. Gilbert, <br> *Magistrate Judge.* |

**O R D E R**

Robert Hoyt applied for disability benefits and supplemental security income, claiming to be disabled because of severe pain in his back, neck, and extremities caused by degenerative disc disease, spinal stenosis, and obesity. An administrative law judge

concluded that Hoyt could perform light work and thus was not disabled. But because the ALJ improperly discounted the opinion of Hoyt's treating physician about his condition, we vacate the district court's judgment and remand to the agency, though for reconsideration only of Hoyt's SSI claim.

Hoyt, now 40, built house frames for several years in his early twenties before suffering injuries to his hip and back during two work-related accidents, one in 1996 or 1997 and another in 2000. After his second accident, Hoyt sought treatment for a year with a rehabilitation physician, who concluded that he was suffering from, among other things, degenerative disc disease and nerve damage; physical exams, however, revealed that he still had full range of motion and normal strength in his hip and legs. (Hoyt testified that he did not seek treatment again until 2007 because he could not afford to do so.) He continued to engage in part-time carpentry work until 2005, when his back pain became too severe. He remained active, however, between 2005 and 2007, working on average twenty hours a week primarily clearing small stones from a 50-acre property and mowing it with a tractor, and completing a full-time course load at a local community college. In 2007 Hoyt also spent two months working full-time as a machine operator.

But Hoyt's back pain worsened in 2007 and he began experiencing pain in his right arm, so he again sought treatment. He participated in two physical therapy sessions, received a cortisone injection, and took pain killers and anti-inflammatory drugs. He also underwent an x-ray and an MRI of his cervical spine. The MRI revealed disc bulging and narrowing of his spinal canal and neural foramina (openings in the spinal canal which transmit nerves out into the rest of the body, see DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 722 (30th ed. 2003)).

That year he also applied for DIB and SSI.[1] In connection with those applications, Hoyt was examined by an internist, Dr. Vinod Motiani, who concluded that Hoyt could walk, kneel, and squat without difficulty, but also noted that he possibly suffered from

---

[1] To qualify for disability insurance benefits, Hoyt must show that he was disabled before his date last insured in 2003. See *Shideler v. Astrue*, 688 F.3d 306, 312–13 (7th Cir. 2012); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 802 (7th Cir. 2005). But even if he cannot show that he was disabled by 2003, he may still be entitled to supplemental security income if he demonstrates that he is *presently* disabled and of limited means. See 42 U.S.C. §§ 1381a, 1382; *Sienkiewicz*, 409 F.3d at 802; *Steed v. Astrue*, 524 F.3d 872, 874 n.2 (8th Cir. 2008).

"some" degenerative disc disease and nerve damage. Two consulting physicians reviewed Hoyt's medical records and concluded that despite the evidence of disc abnormalities and spinal stenosis, as well as his obesity (he was 5'11" and 288 pounds), Hoyt's performance on physical exams reflected that he could still perform "medium work."

But Hoyt's treating physician, Dr. Jennifer Byrd, a family practitioner and internist who saw Hoyt several times between 2008 and 2009, regarded Hoyt's condition as more severe. She noted in a 2008 report that, as the result of nerve damage, Hoyt suffered from chronic pain in his neck, hip, and back, and that his ability to sit, bend, push, pull, and use his right hand was below normal. By 2009 she assessed his condition as having significantly worsened. Relying on the results of a 2008 lumbar MRI (which showed disc bulging and moderate to severe narrowing of his neural foramina) and a physical exam (which revealed "severely limited range of motion"), Dr. Byrd opined that Hoyt could not work "given the need for frequent position changes, the need to lie down intermittently, and a distractible pain that is easily exacerbated by simple movements."

After the state agency denied his claims, Hoyt had a hearing before an ALJ. He emphasized that, at least since 2007, he spent up to three-quarters of the day lying down and was not able to sit, walk, or even use the computer without experiencing severe pain. A vocational expert also testified and concluded that Hoyt could perform essentially all light work but, even if he were limited to sedentary work, jobs remained available to him. Given this evidence, the ALJ determined that Hoyt was not disabled and thus not entitled to either DIB or SSI. Applying the five-step sequential process detailed in 20 C.F.R. § 404.1520(a)(4), the ALJ found that Hoyt had not engaged in substantial gainful activity since the onset of his asserted disability (step one), and that his degenerative disc disease and obesity were severe impairments (step two), but that those conditions did not meet the criteria to establish presumptive disability (step three). The ALJ found that Hoyt's allegations were not "fully" credible, emphasizing among other things, his minimal treatment and significant daily activities. The ALJ then determined that Hoyt could not perform his past work, but his residual functional capacity allowed him to perform the full range of light work, (step four). See 20 C.F.R. § 404.1567(b). The ALJ concluded, however, that significant jobs remained available to Hoyt in the regional economy (step five). The Appeals Council denied Hoyt's request for review, and a magistrate judge, presiding by consent, upheld the ALJ's ruling.

On appeal Hoyt's strongest argument is that the ALJ incorrectly assessed his

residual functional capacity by not appropriately weighing the opinions of his treating physician, Dr. Byrd. If fully credited, her opinions from 2008 and 2009— that Hoyt's conditions necessitated "intermittent periods of recumbent rest" and "frequent position changes," and were aggravated by "long term sitting, long term standing, twisting, and walking" as well as "simple movements,"—suggest that he could not, as of 2009, perform sedentary work.

An ALJ cannot reject the opinion of a treating physician without explanation, see 20 C.F.R. § 404.1527(c)(2); *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir.2011), and here the ALJ failed to support his decision to discount Dr. Byrd's conclusions. First, the ALJ inappropriately substituted his own medical judgment in place of Dr. Byrd's, see *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996), by interpreting Hoyt's electromyography exam and lumbar MRI as inconsistent with his complaints of pain; in contrast, Dr. Byrd cited the lumbar MRI in support of her diagnosis, and particularly its evidence of "moderate to severe" narrowing of Hoyt's neural foramina. See Jeffrey N. Katz & Mitchel B. Harris, *Lumbar Spinal Stenosis*, 358 NEW ENG. J. MED. 818 (2008) (spinal stenosis can be caused by narrowed spinal canal *or* narrowed neural foramina). Second, contrary to the Commissioner's position, the ALJ could not rely solely on the state-agency physicians, because those doctors never examined Hoyt or reviewed the results of his electromyography test or lumbar MRI, and because their dated opinions could not account for how Hoyt's condition might have deteriorated. See 20 C.F.R. § 404.1527(c)(1)–(3); *Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). The ALJ's failure to appropriately weigh Dr. Byrd's opinions is a sufficient ground for remanding Hoyt's SSI claim. See *Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011); *Punzio v. Astrue*, 630 F.3d 704, 710–11 (7th Cir. 2011). But because Dr. Byrd discussed only Hoyt's functionality as of 2009, her opinions shed no light on whether Hoyt was disabled by his date last insured in 2003 and so do not warrant a remand of Hoyt's DIB claim.

Hoyt also attacks the ALJ's residual functional capacity determination by challenging the ALJ's failure to discuss his obesity as well as the ALJ's adverse credibility determination. Hoyt contends that the ALJ was required to address how his obesity might exacerbate his pain, see 20 C.F.R. Part 404, Subpart P, App. 1 § 1.00(Q), but the ALJ indirectly accounted for Hoyt's obesity by relying on the medical opinions of state-agency physicians who evaluated his height and weight. See *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). With regard to credibility, Hoyt argues that the ALJ should not have relied on his failure to seek treatment between 2001 and

2007 without addressing his explanation that he was simply unable to afford medical care, see SSR 96-7p, 1996 WL 374186 at *7–*8 (Jul. 2, 1996); *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009). But even if that omission amounts to error, it does not undercut the ALJ's other valid reasons for discounting Hoyt's testimony—Hoyt's conservative treatment and normal physical exams, see *Sienkiewicz*, 409 F.3d at 804; *Powers v. Apfel*, 207 F.3d 431, 435–36 (7th Cir. 2000), his extensive daily activities (working, driving long distances, and attending classes), see *Filius v. Astrue*, 694 F.3d 863, 869 (7th Cir. 2012); *Schmidt v. Astrue*, 496 F.3d 833, 843–44 (7th Cir. 2007), and his admission that his most significant limitations did not begin until long after his date last insured.

Hoyt lastly challenges the ALJ's reliance on the vocational expert's conclusions, arguing that the expert's raw data was not "available on demand." See *McKinnie v. Barnhart*, 368 F.3d 907, 910–11 (7th Cir. 2004); *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). But given the ALJ's determination that Hoyt could still perform light work as of 2003, the agency's Medical Vocational Guidelines mandated a finding of "not disabled," see 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.21; SSR 83-14, 1983 WL 31254, at *2 (1983); *Haynes v. Barnhart*, 416 F.3d 621, 627–628 (7th Cir. 2005), regardless of any conclusions rendered by the expert.

Accordingly, we VACATE the judgment and REMAND the case for the limited purpose of having the ALJ reexamine the opinions of Hoyt's treating physician, Dr. Byrd, and consider the relevance of those opinions for his SSI application.