NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 4, 2020
Decided August 31, 2020

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 19-3031

| | |
|---|---|
| BARBARA JONES,<br>    *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 1:18-cv-03383-MJD-TWP |
| ANDREW M. SAUL,<br>Commissioner of Social Security<br>    *Defendant-Appellee*. | Mark J. Dinsmore,<br>*Magistrate Judge*. |

**O R D E R**

Barbara Jones, a 60-year-old woman who suffers primarily from pain in her right knee and shoulder, challenges the denial of her application for Social Security disability insurance benefits. In concluding that Jones could perform past relevant work, the administrative law judge rejected the opinions of her own agency's physicians, who concluded that Jones's limitations were potentially disabling. Because the ALJ impermissibly relied on her own judgment to reject those uncontradicted medical opinions, and because substantial evidence does not support the denial of benefits, we vacate the judgment and remand the case for further proceedings.

## I

Jones alleged disability based principally on a right rotator-cuff tear with chronic shoulder-and-arm pain, right-knee degenerative-joint disease, arthritis, asthma, and chronic obstructive pulmonary disease (COPD). Before applying for Social Security benefits, she had worked as a bus driver, a gate guard, a meat wrapper, and most recently as a short-order cook at a fast-food restaurant. Her alleged period of disability lasted slightly more than a year—from June 14, 2013, to June 30, 2014, her date last insured (*i.e.*, the last day for which she had acquired sufficient coverage during her work history to remain eligible for benefits).[1] See 20 C.F.R. § 404.130; 42 U.S.C. §§ 413, 423 (providing that coverage for disability insurance benefits depends on length of claimant's qualifying work history). The record of Jones's impairments, however, is not limited to evidence within the disability period. See 20 C.F.R. § 416.945(a)(1) (agency considers all relevant evidence); *Pepper v. Colvin*, 712 F.3d 351, 364 (7th Cir. 2013).

### A.    Evidence Preceding Disability-Onset Period

In March 2013, Jones began seeing Dr. Christopher Bales, a surgeon and orthopedic specialist, for pain and locking in her right knee. An MRI of the knee revealed a tear in the medial meniscus, fluid and debris in the joint, and a "large" Baker's cyst (a fluid-filled sac behind the knee). Dr. Bales diagnosed degenerative-joint disease and soon thereafter performed arthroscopic surgery on her right knee, repairing cartilage and partially removing the medial meniscus. She then underwent physical therapy, regaining partial functioning in her knee. One month after the surgery, Dr. Bales "emphasized" that Jones would continue to experience symptoms of arthritis.

Around the same time, Dr. Bales also performed arthroscopic surgery on Jones's right shoulder. The procedure uncovered a "complete tear of the rotator cuff tendon," which he repaired. The doctor also performed a "subacromial decompression."[2]

---

[1] According to the Commissioner, Jones was recently found to have been disabled since April 2017. The source of that determination—a ruling by an ALJ on Jones's application for supplemental security income—does not appear in the record.

[2] A subacromial decompression is used to treat shoulder-impingement syndrome. *Arthroscopic Shoulder Decompression*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/treatments/16757-arthroscopic-shoulder-decompression (last visited July 22, 2020). Impingement is when a bone in the shoulder rubs against a tendon, causing pain and inflammation; it often results from repetitive shoulder activities like lifting and reaching. *Shoulder Impingement Syndrome*, WEBMD (June 20, 2019), https://www.webmd.com/arthritis/impingement-syndrome.

### B.       Evidence from Disability Period: June 14, 2013, to June 30, 2014

After her shoulder surgery, Jones attended physical therapy for several months. At an appointment in early September, she denied experiencing pain in her right shoulder but said that she had "trouble lifting a gallon of milk." A few weeks later, when she was discharged from physical therapy for missing sessions, she had yet to regain "functional use" of her right shoulder. Dr. Bales saw her for a follow-up in November and noted that she was "doing well" with "minimal complaints" (for example, she mentioned "a little aching soreness" from cold weather), and that she had full range of motion in her right shoulder, as well as full rotator-cuff strength without pain.

During this time, Jones also sought medical care for her respiratory conditions. In January 2014, she went to an emergency room complaining of weekly episodes of shortness of breath. The ER doctor attributed this to her asthma, exacerbation of her COPD, and laryngitis. In April, she was prescribed medication and an inhaler for her asthma.

### C.       Evidence Post-dating Disability Period

In July 2014, Jones underwent x-rays of her lumbosacral spine because of her "clinical history" of "back pain." A doctor diagnosed arthritis in her lower spine and advised her to take over-the-counter medication twice daily to relieve her pain.

Three months later she returned to the emergency room for pain that had flared up in her shoulder. She said that she recently had reinjured her shoulder at her job as a short-order cook when she tried to move a heavy table. An MRI revealed a "full-thickness tear of the supraspinatus tendon," mild infraspinatus tendinopathy,[3] moderate joint degeneration, and mild thickening of the coracoacromial ligament, potentially causing impingement. After the MRI, Dr. Bales performed an "arthroscopy with revision rotator cuff repair" on her right shoulder.

By late December, Dr. Bales had imposed a "work restriction limiting lifting and overhead work using [Jones's] right arm." The next month, he restricted her to "no lifting over 5 pounds and no repetitive work with that arm" to protect it after the surgery. Two months later, he diagnosed her with shoulder bursitis.[4]

---

[3]  Infraspinatus tendinopathy is inflammation or small tears in a muscle of the rotator cuff; causes include overuse, shoulder trauma, arthritis, and age. *What Causes Infraspinatus Pain and How Can I Treat It?*, HEALTHLINE (Jan. 15, 2020), https://www.healthline.com/health/infraspinatus-pain.

[4]  Bursitis is inflammation or irritation of bursa sacs, which ease friction between bone and muscle; it is

In May 2015, after Jones began to experience what Dr. Bales reported as "worsening symptoms" associated with heavy lifting at work, he recommended that she return to "sit-down work to allow her shoulder to rest." Dr. Bales later authorized a "functional capacity evaluation to assess for permanent restrictions," the results of which led him to place permanent restrictions on her for "repetitive right arm movement, no lifting over 10 pounds[,] and limiting lifting away from the body greater than 10 pounds."

In connection with Jones's application for disability insurance benefits, a state-agency physician, Fernando Montoya, reviewed her medical records and concluded that the objective medical evidence "alone" substantiated her statements about the intensity, persistence, and functionally limiting effects of her impairments. Citing Jones's history of recurrent rotator-cuff injuries, the doctor opined that she could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, and with her right arm only occasionally push, pull, or reach in any direction. After Jones's application was initially denied, another agency physician, B. Whitley, reviewed her medical records and agreed with the first physician's assessments. The agency again denied her application, and she requested a hearing before an ALJ.

## II

At a video hearing before an ALJ in late 2017, Jones testified about her ability to perform her last full-time job—a three-month stint in 2014 as a short-order cook. She recalled at that time being "able to lift at least 35/40 pounds" as required to do her job. Her "laid back" employer accommodated her, however, by allowing unscheduled breaks for her arthritic back pain—a practice that no "competitive" employer would permit. (Outside of work, she said, her back pain hindered her ability to do housework and shop for groceries.) Jones testified that despite her pain, she "had to have a job," so she "just pushed through it." But she had to stop working in September 2014, when she reinjured her right shoulder and Dr. Bales placed permanent restrictions on her physical abilities.

A vocational expert testified next about the availability of work for a person with Jones's limitations. If this person could "lift and carry 50 pounds occasionally, 25 pounds frequently," and "push and pull to the same extent," then she could perform Jones's past work. That past work could not be done, however, if the person could only "lift and carry 20 pounds occasionally, 10 pounds frequently," push and pull to the

---

usually caused overuse of a joint. *Bursitis*, WEBMD (Dec. 11, 2019), https://www.webmd.com/pain-management/arthritis-bursitis?print=true.

same extent "except for the right upper extremity," and "occasionally reach with the right arm in front, laterally and overhead." But even with these restrictions, the VE added, this individual could perform some jobs in the national economy: 50,000 "furniture rental clerk" jobs and 4,800 "usher" jobs. Jones objected that there was no foundation for the VE's testimony about the existence of these jobs during the relevant period.

Applying the agency's standard five-step analysis, see 20 C.F.R. § 404.1520(a), the ALJ concluded that Jones was not disabled. At step one, the ALJ found that Jones had not engaged in substantial gainful activity during the disability period. At step two, the ALJ determined that her asthma, COPD, right-knee degenerative-joint disease, and right rotator-cuff tears qualified as severe impairments. At step three, the ALJ ruled that Jones did not meet the criteria for a listed disability. See 20 C.F.R. § 404.1525. At step four, the ALJ found that Jones had the residual functional capacity (RFC) to perform past work and therefore was not disabled. Because of this finding, the ALJ did not proceed to step five to determine if other work would be available, see 20 C.F.R. § 404.1520(a)(4)(iv), and overruled Jones's evidentiary objection at the hearing as immaterial.

The key determination in the ALJ's decision was her RFC assessment: that Jones could perform medium work[5] without any further restrictions on her ability to lift, carry, push, pull, or reach. In making that assessment, the ALJ rejected the opinions of the only three doctors whose reports appear in the record (treating physician Bales and the agency's two consulting physicians, Montoya and Whitley), who all concurred with the more restrictive set of limitations that the VE testified would preclude Jones's past work. Regarding the agency's physicians, the ALJ gave their opinions only "slight weight" because they had not examined Jones and because they relied on records "concerning the period after the claimant's date last insured," including her back x-rays and "recurrent" history of shoulder injuries. As for Dr. Bales, his opinion warranted only "limited weight" because he evaluated Jones after the disability period and provided mostly "short-term precautions." The ALJ deemed all three assessments "overly restrictive" on grounds that Jones had experienced improvement after her 2013 knee and shoulder surgeries.

The district court upheld the ALJ's determination, concluding that substantial evidence supported the denial of benefits because the ALJ permissibly discounted the

---

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

three physicians' opinions based on Jones's testimony and treatment records, rather than the ALJ's own medical judgement.

### III

On appeal Jones argues that substantial evidence, which is all that is required to uphold the agency's decision, see *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), does not support the ALJ's conclusion that she could sustain work without restrictions on reaching, lifting, carrying, pushing, or pulling up to 50 pounds. She maintains that the ALJ "unilaterally" made a medical judgment (*i.e.*, "played doctor") in deciding that Jones's three-month stint as a short-order cook—which required greater exertion than every physician opined she could perform and quickly resulted in a second rotator-cuff tear—showed that she could perform at that level during the entire year in question. Without any evidence from a qualified medical professional, Jones argues, the ALJ lacked a sufficient basis on which to conclude that the more restrictive limitations assessed by the three doctors whose opinions appear in the record did not manifest until after the disability period, when Jones reinjured her shoulder.

We agree with Jones that the ALJ failed to provide adequate reasons for discounting these doctors' assessments. An ALJ need not credit the opinions of the agency's own doctors, but *rejecting* the opinion of an agency's doctor that supports a disability finding is "unusual" and "can be expected to cause a reviewing court to take notice and await a good explanation." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014); see also *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) (given their employment relationship, the agency's doctors are "unlikely … to exaggerate an applicant's disability"). Here, the ALJ discounted the doctors' assessments as overly restrictive because Jones—after her surgeries—had shown improvement and expressed few complaints. But "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves," *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018), and no medical source here opined that Jones's post-surgical progress for her recurrent shoulder problem was inconsistent with the consultants' restrictions that she not lift more than 20 pounds, or their and Dr. Bales's restriction on the use of her right arm.

It also was error for the ALJ to fault the agency's physicians and Dr. Bales for relying on evidence that post-dated Jones's date last insured. Medical evidence from after the alleged disability period is relevant to the extent it may reflect the claimant's impairments on a prior date. *Pepper v. Colvin*, 712 F.3d 351, 364 (7th Cir. 2013) (no error for ALJ to rely on assessment post-dating claimant's date last insured where findings were consistent with previous eye examinations that chronicled long-term eye

impairments); *Allord v. Barnhart*, 455 F.3d 818, 822 (7th Cir. 2006) (retrospective diagnosis of PTSD supported finding of past impairment). Here, the agency's physicians were asked to assess Jones's limitations during the year in question, and they presumably found relevant the x-rays of her back (taken nine days after the date last insured) and her history of recurrent shoulder injuries (one surgery just before the alleged onset date and one just after the date last insured). Further, even if these retrospective diagnoses were uncorroborated by contemporaneous medical records (not necessarily the case here), Jones's own statements provide competent "lay evidence relating back to the claimed period of disability" to support an inference that her back pain and first rotator-cuff tear inhibited her ability to work during the relevant period. *Allord*, 455 F.3d at 822. If the ALJ questioned the accuracy of the retrospective medical evidence here, she should not have jumped to her own medical conclusion but instead should have consulted another medical expert to assess how Jones's treatment post-date-last-insured "related to other evidence in the record." See *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018).

The Commissioner counters that substantial evidence for the ALJ's decision can be found in Jones's own testimony that she could lift 35 to 40 pounds and do her job before she reinjured her shoulder—testimony that seems directly to refute the opinions of the agency's doctors. Quoting this court's decision in *Kapusta v. Sullivan*, 900 F.2d 94, 96 (7th Cir. 1989), the Commissioner asserts that a claimant's "own testimony [can] provide[] substantial evidence to support [an] ALJ's conclusion." In *Kapusta*, however, "none of the medical reports [were] inconsistent with the ALJ's determination." Here, by contrast, *all* the medical reports contradict the ALJ's findings. Jones's testimony *might* support a less restrictive RFC, but an ALJ must "provide a valid explanation for preferring" one view over another. See *Beardsley*, 758 F.3d at 839–40 (ALJ erred in crediting opinion of agency's doctor over another's based on what the ALJ alone deemed were inconsistencies between the claimant's statements and the latter doctor's assessed limitations).

## IV

The Commissioner further proposes a harmlessness analysis: that even if the ALJ had erred by discounting the opinions of the doctors, Jones still would have been found to be not disabled because the VE testified that a person with the more restrictive RFC could work as a furniture rental clerk and usher. We agree with Jones, however, that the error cannot be deemed harmless. We cannot be sure that any error was harmless if the evidence does not "conclusively" establish a material fact in a case (here, the availability of work for Jones). See *Rose v. Clark*, 478 U.S. 570, 580 (1986); see also *Shinseki v. Sanders*,

556 U.S. 396, 413–14 (2009) (given uncertainties about whether additional evidence would show injury to be compensable, error in failing to notify claimant about need for more information was not harmless). The ALJ here did not make a finding on the VE's contested testimony. Because it remains unresolved whether other work would be available to a person facing more restrictive limitations than those found by the ALJ, we VACATE the judgment and REMAND the case for further proceedings.